The next case today is Giorgio Zamperello-Rheinfeldt v. Ingersoll-Rand de PR, Inc. et al. Appeal No. 20-1356. Attorney Simonet, please introduce yourself on the record and proceed with your argument. May it please the Court, my name is Inger Simonet and I will be arguing on behalf of the District Court. The District Court judgment dismissing the complaint at summary judgment should be reversed because 1. there is direct evidence that Zamperello's age was the reason for his termination, 2. there are issues of material fact as to whether Zamperello's position was in fact eliminated, and 3. there are issues as to whether the restructuring of the operation was a pretext and that it lacked neutrality. At the time of Zamperello's termination, his superior, and by the way he is the decision maker in this case, told him that he was being terminated because he wanted to rejuvenate the business. This statement made at the time of termination can be interpreted by the jury as proof of discriminatory animus. The employer in none of their papers have tried to deny that the comment was made. They have simply instead attacked Mr. Zamperello's credibility because at one point in his deposition when he was asked particularly whether the exact word was referred to him as rejuvenating, instead of rejuvenating, he said that he doesn't recall the exact word. That your honor, it's an issue at best of Mr. Zamperello's recollection, Mr. Zamperello's memory, and that is something that should not draw in any fashion an inference in favor of or negative inference against Mr. Zamperello. At best it should just draw an issue of credibility that should be for the jury to decide and not for the judge. I'm sorry, could you just clarify one more time what you're saying? He said he didn't remember. You're saying it's the difference between the word rejuvenate versus rejuvenating? Yes. No, no, no. He said he doesn't recall the exact word. He was asked, he referred in his exact word rejuvenating. He said, well, I don't recall the exact word. And that's all he said regarding that. Basically, it's the difference between rejuvenating and rejuvenating as two different words. They might mean the same, but they're referring to different words. And he says, I don't recall the exact words used, but all throughout the transcript in many, at least three or four times Mr. Zamperello mentioned that at the time of his termination, the reason that he was given by Mr. Fletcher, who was his direct supervisor and the decision maker, was that the company wanted to rejuvenate the business. So basically what we're arguing here, your honor, is that here at best there's an issue of memory of whether he can recollect the exact words, whether it was rejuvenate or to rejuvenate. Counsel, could you just, just to clarify for me, I have the same question as Judge Thompson. When you're distinguishing between rejuvenate and rejuvenating, is that you saying those were the two choices or did your client say that at deposition that it was one or the other? No, no. Mr. Zamperello said rejuvenate. Plaintiff Defendant's Counsel asked, was the exact word rejuvenating? And he said, I don't remember the exact words. Okay. And that's, that's, that's what he testified. So basically throughout the record, he insisted over and over that that expression, that remark was made at the point of determination. So where we are arguing here, your honor, is that this at best is an issue of recollecting what exact words was a dealt to him, was told to him. And that's an issue for the jury. And it's an issue for the court and the court should have never drawn an inference that. One last way. Are you saying that the record supports that he provided testimony that either the word rejuvenate or rejuvenating was used, although he wasn't sure which of the two? Yes, your honor. He doesn't say which one of the two, but the question did change the word. All right. So is it your position that because the defendant argues that the word rejuvenate isn't necessarily referring to youth and that it has more than one meaning? Are you, are you saying that what his supervisor meant by the term rejuvenate should be an issue for the jury? Because we do have this case law that talks about ambiguity of words. Yes, your honor. There's the case of Anderson Liberty Law and there's the case of Blanchard Peerless. In both cases, all subjective intentions, it's a standard in favor of plaintiff should be decided by the jury. And there's also plenty of case law indicating that when you might have two meanings, that's for the jury to decide. And I have to be, perhaps I'm going to have to go further in this case because the definition suggested by defendant in this case as to rejuvenate and the dictionary, the precise example used, it says to bring new people. But new people doesn't necessarily mean young people. Well, but rejuvenate, one of possible definition is to bring younger people. And when we look at the facts and how the purported restructure of the organization was made, we're going to come to a conclusion that it was also pretext. And adding both together, not only that should be an issue for the jury to decide, but that's evidence that can be used not only to show pretext but to show discrimination. And we're going to, as we proceed forward, we'll go into restructuring situation. And I think that's also very important with the issue of memory that defendants never, never argue in any of their briefs that the word was never said. They just attack plaintiff credibility. And we respect that should be an issue for the jury here. Now, we say our claim is that the court, the district court should have not used the prima facie evidence sharing framework. It should have gone with the direct evidence. Now, what is the employer articulating in this case as the non-discriminatory defense? They say that Mr. Santelaro was terminated as part of restructuring and reorganization. However, we go into the EOC position statement filed by the employer, and that is on appendix 465. If we go to that position statement, which was filed one year after Mr. Santelaro's termination, you will see no mention of Mr. Santelaro's position being eliminated. And as a matter of fact, what that position statement said is that Mr. Fletcher, who was Mr. Santelaro's supervisor, learning supervisor, who informed him of the decision and who was the decision-maker, was serving as of August 2014, was serving as district general manager. All three letters in capital that are referring to the classification. So we're arguing here, Honor, we posit that that position statement filed a year after the termination shows that Mr. Santelaro's position was not terminated, was not eliminated. Instead, what happened here, and it's also very important, is that they took Mr. Santelaro's functions and with less seniority to those new positions, assuming Mr. Santelaro's duties. There's case laws. I thought it was undisputed that they eliminated four positions and replaced them with two. It is my recollection wrong? No, that they discharged four employees, Your Honor. Obviously, we have to argue that they eliminated the position. What they did is, they actually, they did Mr. Santelaro's position. They said they eliminated and they created two positions with the title of business leaders. And they named, appointed Mr. Sangenis and Mr. Teruel. And both of those employees assumed Mr. Santelaro's duties. And all the duties that they were performing that could have been argued by defendant that are different duties, all were duties encompassed within the leadership position that Mr. Santelaro had. As a matter of fact, even if arguing on the prima facie case and the fourth prompt changes when there's a reduction in forced case, there's some wording by this court that says that a person is replaced only when another employee is hired or reassigned to perform the plaintiff duties. That's exactly what happened here. Defendant accepts that the three prompts of the prima facie case were made. The fourth prompt was made also because this court has stated that if he was reassigned, and that's exactly what happened here, the duties were reassigned to a new position. Mr. Simonette, let me interrupt you there and ask if the court has additional questions at this time. I just have one because Trine points to the evaluations that your client did of the two people who replaced him in doing his job responsibilities. My question was, who at the company did your client's evaluation, job performance evaluation? Your Honor, there's nothing on the record that that was ever done. There's nothing on the record that Mr. Santelaro was ever consulted or informed of the alternative that his position was being eliminated. There's case law by this court suggesting that that alone could talk about two pretexts in case of reorganization in force. Thank you. Thank you. You've reserved some time. We'll hear from Ms. Huck. Good morning, Your Honors, and may it please the court. Mariel Huck on behalf of the appellees, here and after referred to as Trine. Today, we will argue that the district court's grant of summary judgment must be affirmed for the following reasons. First, there is no direct evidence of age discrimination in this case. Excuse me, Ms. Huck. I'm sorry to interrupt. Mr. Simonet, would you mind muting your video? I'm sorry. That's all right. So why isn't the use of the word rejuvenate evidence of direct discrimination? To answer your question, Your Honor, the fact is that in this case, Mr. Santelaro was asked directly and in no uncertain terms whether or not he recalled the use of the word rejuvenate or rejuvenating in the context of his termination. Before you do that, as I read the record, he was asked directly whether he recalled the use of the word rejuvenating. Yes, correct. I don't see them separately asking, does he recall the use of the word rejuvenate? Well, Your Honor, in the context of the phrase he used, it's the same thing. He was asked whether rejuvenating was part of the conversation that he had with Mr. Fleffel, and he specifically indicated that he could not remember what specific words Mr. Fleffel used in the context of the conversation, and he further went on to state that he has been speculating that age had to be reason for his termination. So what? Since he cannot recall the word that was used, it cannot constitute direct evidence because it could not, as he can... Well, how does that just not go to weight as opposed to admissibility? Well, Your Honor, in this case, we're not using his lack of recollection as to another topic to call into question his ability to recollect here. He was asked about the word, and he said he could not remember. Accordingly, we cannot draw an inference in favor of plaintiff because it could not be reasonable, but we cannot draw any other inference that it was used at all. So what if we disagree with you about that, and we say that the word rejuvenate or rejuvenating was used, or that there's at least a question of fact about that, would that be direct evidence? We disagree, Your Honor. With respect, the comment would still be inherently ambiguous because, as Judge Thompson noted during Appellant's argument, it is a word that has more than one plausible interpretation, and in an organizational context... But in the cases like the Patton case and the case cited by Patton, those cases weren't kicked out. Those cases were kicked out after trial, so that issue went to the jury. Well, Your Honor, we believe that coupled with the other evidence in this case, there is insufficient context to allow this comment to be considered direct evidence, and without sufficient context to allow a reasonable fact finder to infer that this was an age-related comment... Isn't that what the jury determined? Rejuvenate does have... I mean, I spent some time yesterday actually looking it up. The common meaning of rejuvenate refers to youthful. There are some alternative definitions which don't necessarily, but why wouldn't it be reasonable for them to argue that in this context, it should be reasonably understood to refer to youthful? We disagree, Your Honor, because in the context, what we're looking at is a restructuring where the intention of the company and the decision maker was to implement a whole new organizational structure and new ideas that would allow the company to become more profitable and more efficient. It certainly seems to be a good jury argument. Well, Your Honor, we believe that the ambiguity precludes a plaintiff and this honorable court from using it as direct evidence, which was the correct conclusion reached by the district court in granting summary judgment. We agree with the district court... Counselor, just before you leave that point, so if we disagree that the word rejuvenate or rejuvenating, if we disagree with you that that word could not constitute direct evidence, you say even still, if you look at it in context, that it would be unreasonable for a jury to conclude that it is sufficient direct evidence in the context is that there's this restructuring of the business. Is that it? Correct, Your Honor. I would take it a step further. If you look at the composition of the district court properly pointed out that there was a higher percentage of workers within the protected age group after the restructuring than before. In fact, after the restructuring... All of the eliminated workers were in the protected group. No, they weren't, Your Honor. There was one position eliminated where the employee was in her 20s. So not all of the employees affected were within the protected group. And taking the of the 100 employees in the train office at the time of the restructuring were over 40 years of age. So there's not an issue of a disparate impact of the protected workers within the workplace. The logic of the argument. Suppose the statement had not been, we want to rejuvenate the company. They said, we want to get younger people at the company. Well, Your Honor, with respect, that would be a different case. No, I know that. So I'm trying to figure out this same record, except instead of saying we want to rejuvenate things, they said, we want younger people at the company. You would say it's a jury question, right? Whether all the evidence about reduction in force weighed against the statement, I want a younger workforce, whether that meant he was fired because of his age or he was fired because they were doing a restructuring, right? Well, Your Honor, even in the context of a restructuring, an employer cannot act in a way that would be in the interest of the company. So if the employer had said, if the employer had said, we want younger people. So if we think rejuvenating is direct evidence, isn't that us concluding that a jury could conclude that that's equivalent to saying, I want a younger workforce? We would disagree with respect, Your Honor, because of the fact that rejuvenation organizational context lends itself to more than one interpretation. Yeah, I'm just asking if we disagreed with you on that point, as I thought Chief Judge Howard asked you, if we disagreed on that point and we thought a jury could conclude that that statement was tantamount to saying, I want a younger workforce, not that it had to, but it would be reasonable for it to read it that way. Could you still then win on summary judgment? Yes, Your Honor, we believe that the overall record in this case supports a finding that the reasons for the restructuring were non-discriminatory, that the treatment of the employee, that the restructuring was age neutral, and that the aggregate of proof in this case supports train's proffered reason of cost savings and efficiency here. The record fully supports the fact that the two-headed structure that was in place was decided upon because the Puerto Rico office was suffering losses and it had unacceptably high expenses. The plaintiff appellant in this case was made aware of this well in advance of the company deciding to restructure from the top down. So we believe that the reasons behind the restructuring coupled with the fact that it did in fact result in almost a million dollars in savings between 2013 and 2014 supports that train met its obligation to proffer a non-discriminatory reason for this termination. Moreover, there were persons hired subsequent to the restructuring, two managers that were hired not to replace plaintiff and not to carry out his duties, who were his same age or older at the time of hire, and that would weigh strongly against a finding of discriminatory animus because if our intent was to bring in younger people, as the court suggests could be an interpretation, why would we hire or why would train hire people who were older than the plaintiff to fill those new positions later on? Counsel, I know you, for good reasons, legitimate reasons, did not want to directly engage with Judge Barron's question on this point, but I would like to know. So let's say that there were specific comments made to this employee that indicated that a jury could find from those comments that he was being let go because of age for an inappropriate reason. In the context of a reorganization, restructuring of the company, and as you know, the law is that even with a restructuring, you can't discriminate. Wouldn't that, going back to Judge Thompson's question, actually, if we conclude that it's a jury question about whether rejuvenate is direct evidence of discrimination, wouldn't all the rest of that, the context, go to the jury? We disagree, Your Honor. The aggregate of the proof here does not support the appellant's that the court's gatekeeping function here, even with that ambiguous comment. Okay, so change the comment to a non-ambiguous comment. Let's make it a discriminatory comment. Does that change your argument? Can context still result in summary judgment? Yes, Your Honor, we believe so. Okay, why? Or what's your best authority for it? Well, Your Honor, our best authority would be this court's holding that when a comment put in context does not directly reflect, or the aggregate proof does not reflect, that the employer acted with discriminatory and with summary judgment may still be appropriate. And we believe that once trains, non-legitimate, non-discriminatory legitimate reasons are addressed, and the aggregate proof that plaintiff has put forward is assessed, the outcome is that the district court's judgment must be affirmed, because there is insufficient evidence here to support a finding that overall there was any intention to take age into consideration in this particular case. All right, thank you. Does the court have additional questions? Judge Thompson? I was a bit baffled by the court's exclusion of the evidence about the Venezuelan office. I don't understand how records that emanate with train could, how you could argue any prejudice. To answer your question, Your Honor, the documents were properly excluded because they were untimely disclosed. Second, it is our position that the documents regarding the Chile office are a red herring. Exclusion is a severe remedy. I would disagree, Your Honor. At the time that the documents were excluded, it was after the discovery cutoff and after summary judgment. But they were still your documents. They were not our documents, Your Honor. They were documents produced by the Chile office, not the Puerto Rico office, which is run independently from any other affiliate of train. They were not properly authenticated, and they were not, and plaintiff has no personal knowledge as to those documents, so as to be able to enter them into the record. Furthermore, this court has held that the baseline sanction for untimely disclosure is exclusion because there was already a motion for summary judgment presented based on the record that the court had before it at the close of discovery. What is more, we respectfully submit, Your Honor, that the documents do not establish what the appellant would like those documents to show. Here, the documents at best would call into question the employer's business judgment as to the use of the Chile structure in Puerto Rico, but it does not call into question the if they are pointing to this as that they changed their business structure because what was going on in Venezuela was a better business model, and that, in fact, was not true. Why isn't that, why couldn't that be evidence of pretext? Well, Your Honor, first of all, that's not accurate, and second of all, the record demonstrates based on the testimony of Mr. that that model was in place not only in the Chile office, but also in Argentina, Brazil, Colombia. So, the fact that says you honed in specifically in your motion for summary judgment on Venezuela, which is why he weighs, I'm sorry. Yes, and the reason for that is because Mr. Fletwell had previously served as the business director, which was one of the two heads of the office before he was promoted to vice president of Latin America. Therefore, he was extremely familiar with this model, and he deemed it appropriate to implement it here because he thought it would be an effective way to mitigate the Puerto Rico office's decrease in sales by improving the organizational structure and reporting structure to cut costs. So, whether or not his decision was good or bad goes to the employer's business judgment, and that is precisely the sort of thing that this particular court has admonished district courts not to venture into. Whether it worked or it didn't, and whether it was good or it was bad, goes to Trane's business judgment, and in this particular case, the record supports that his in savings year over year. It did result in a reduction of SG&A. Thank you. So, if you would mute your audio and video at this time, we're going to hear from Mr. Simonet on rebuttal. Of course, Your Honor. My back? Yes. Your Honor, we take exception with the employer's characterization that it was a decision taken as part of reorganization, and that there was a whole new structure. This reorganization of supposed reorganization only affected four employees out of 100 employees that they have, and it only affected employees in the administrative aspect of the business, and we would like to call the attention again to Appendix 466, which is the last page of the position statement, when the company before the EOC stated that the administrative expenses were not discussed with Mr. Sampiero with regard to his termination. So, therefore, there was no restructuring. As to the Chile document, Your Honor, first, they were not late. Those documents relate to an argument made by the employer for the first time in summary judgment. In the answer to the complaint, there was never an issue regarding the Chile office and the argument that they were successful. We're presenting those documents to show pretext because those documents show that they were not successful. The Chile operation was not successful. And lastly, we presented those documents in order to impeach that testimony, and that's outside the Rule 233 and the private disclosure of those documents, Your Honor. Can I ask you a question of just practically what's supposed to happen with respect to the documents? If we thought that there was no prejudice from the ruling to exclude because the documents wouldn't affect the business judgment issue, because it would just be a business judgment point on pretext, but we concluded that there was direct evidence of discrimination, so we needed to vacate and remand, how would that the documents? Do you follow? Because it seems to me that the documents might not be very relevant to pretext given our case law, but they could be relevant to a direct discrimination theory. I just don't know how that affects how we're supposed to evaluate the decision to exclude because at the time they were excluded, it was premised on a pretext understanding of the case rather than a direct discrimination understanding. Correct, Your Honor, but those documents will also serve to establish the contradictions in the position that has been presented by the company throughout the process of this case, starting with the EOC, with the answer to the complaint, and then with the motion for summary judgment, which has demonstrated different arguments as to what really happened here, so that's going to be relevant in order to prove also pretext as to discrimination. All right, thank you, counsel. Thank you both. Thank you, Your Honor. That concludes argument in this case. Attorney Simonette and Attorney Haack, you should please disconnect from the hearing at this time.